**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julio Vallejo,<br><br>                    Plaintiff,<br><br>v.<br><br>Azteca Electrical Construction Incorporated, et al.,<br><br>                    Defendants. | No. CV-13-01207-PHX-NVW<br><br>**ORDER** |

Before the Court is the question whether unauthorized workers with claims for unpaid wages and overtime are precluded from recovering liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). There is weight on both sides of the question, but the statutory interpretation tips in favor of recovery. The parties requested a pre-trial ruling to the extent possible. Plaintiff was previously granted summary judgment of liability for single damages, as Defendants did not present any evidence to rebut Plaintiff's motion. Defendants are not represented by counsel. A trial on damages remains, and the parties have consented to a bench trial before a Magistrate Judge after this ruling.

## I. Unauthorized Workers May Recover Unpaid and Underpaid Wages Under FLSA.

Under 29 U.S.C. § 216(b),

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Although § 216(b) mandates that employers who violate § 206 or § 207 "shall be liable" to affected employees in certain amounts, § 260 grants courts some discretion to determine whether to award any amount of liquidated damages up to the amount specified in § 216 based upon certain criteria.

Most courts that have addressed the issue have concluded that an employer who violates § 206 or § 207 is liable to an unauthorized worker in the amount of unpaid minimum wages and/or unpaid overtime compensation for work actually and already performed. *See Lucas v. Jerusalem Café, LLC*, 721 F.3d 927, 933 (8th Cir. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1307-08 (11th Cir. 2013); *Mariche v. Phoenix Oil*, No. CV-13-00550-PHX-NVW, 2014 WL 2467964, at *4 (D. Ariz. June 3, 2014). To reach that conclusion, the courts have found that an unauthorized worker's recovery under FLSA is not precluded by *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 140, 151 (2002).

In *Hoffman*, the Supreme Court held that the National Labor Relations Board's broad discretion to select and fashion remedies for violations of the National Labor Relations Act ("NLRA") must yield when its chosen remedy "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in [the Immigration Reform and Control Act of 1986 ("IRCA")]." *Id.* at 140, 151. The Court found that IRCA made battling the employment of unauthorized aliens central to the policy of immigration law. *Id.* at 147. Further,

> Under the ICRA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of ICRA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations. The Board asks that we overlook this fact and allow it to award backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud. We find, however, that awarding backpay to illegal aliens runs counter to policies underlying IRCA, policies the Board has no authority to enforce or administer. Therefore, as we have consistently held in like circumstances, the award lies beyond the bounds of the Board's remedial discretion.

*Hoffman*, 535 U.S. at 148-49.

Thus, the question in *Hoffman* was not whether the NLRA's definition of "employee" excluded unauthorized aliens, but whether the National Labor Relations Board's remedial power extended to awarding back pay to an unauthorized alien for work not performed. *Lucas*, 721 F.3d at 935. *Hoffman* limited the Board's discretion because of "the strong policies underlying IRCA and the Board's limited power to construe statutes outside of its authority," but it did not address a federal court's power to balance IRCA against another statute if the two statutes conflict. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1068 (9th Cir. 2004). Nevertheless, lower courts remain cautious of *Hoffman*'s opposition to awarding backpay "for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud." *See Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 400 (E.D.N.Y. 2013) (courts have found *Hoffman* "limited to precluding relief for work not yet performed, as opposed to work already performed").

Some courts have reconciled the FLSA and IRCA. Requiring an employer to pay his unauthorized workers minimum wages prescribed by the FLSA for work already performed does not condone or continue an immigration law violation that has already occurred; it merely ensures that the employer does not take advantage of the immigration law violation. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 243 (2d Cir.

2006); *Lucas*, 721 F.3d at 935 (8th Circuit); *Lamonica*, 711 F.3d at 1308 (11th Circuit). "The IRCA and FLSA together promote dignified employment conditions for those working in this country, regardless of immigration status, while firmly discouraging the employment of individuals who lack work authorization." *Lucas*, 721 F.3d at 936. Holding employers liable both for violation of federal immigration law and for violation of federal employment law offsets "what is perhaps the most attractive feature of unauthorized workers—their willingness to work for less than the minimum wage." *Id.* (internal quotation marks, citation, and alteration omitted). FLSA's coverage of unauthorized workers reduces the incentive to hire such workers and discourages illegal immigration, consistent with the purposes of the IRCA. *Lamonica*, 711 F.3d at 1307.

Other courts have acknowledged that the economic incentives underlying federal labor and immigration policy are in tension. "Indeed, every remedy extended to undocumented workers under the federal labor laws provides a marginal incentive for those workers to come to the United States. It is just as true, however, that every remedy denied to undocumented workers provides a marginal incentive for employers to hire those workers." *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1062 (N.D. Calif. 2002); *accord Jin-Ming Lin v. Chinatown Restaurant Corp.*, 771 F. Supp. 2d 185, 189 (D. Mass. 2011) (finding "the mirror-image arguments end up canceling each other out"). In *Singh*, finding it necessary to "sensibly balance competing considerations," the district court found that national labor and immigration policy was most appropriately balanced by permitting an unauthorized worker's FLSA claim to go forward. 214 F. Supp. 2d at 1062.

But in *Jin-Ming Lin*, the district court concluded that "[a]djudication of an FLSA cause of action does not call upon the court to make a discretionary policy- or interest-balancing assessment" because courts do not have discretion to deny the award of FLSA damages when they have been proved. 771 F. Supp. 2d at 190. If a plaintiff proves a FLSA violation, he is entitled to an FLSA remedy, notwithstanding any interference with immigration policy. *Id.* "Any remedy for an incompatibility between federal labor and

- 4 -

immigration policies will have to come from Congress, not the lower courts." *Id.* (finding plaintiffs' immigration status irrelevant to their FLSA claims).

Each of these perspectives has merit. To some extent the purposes of FLSA and IRCA clash, and no statutory text tells which prevails. But several considerations tip in favor of § 216(b) and FLSA. Enforcing § 216(b) undercuts the purpose of IRCA by compensating work that is illegal and often gotten by criminal means. But it also serves the purpose of IRCA by removing the wage advantage of unauthorized workers who will work for less than the legal minimum. There is no unfairness to the employer in paying a legal wage for all work. The employer may not rely on the worker's deception to pay less than he should have paid to whomever he hired. Therefore, the Court concludes that unauthorized workers are not precluded, by that reason alone, from recovering unpaid and underpaid wages under § 216(b).

## II. Unauthorized Workers Are Not Precluded From Recovering Liquidated Damages Under the FLSA.

When an employer violates § 206 or § 207, § 216(b) provides for payment of both unpaid wages plus an additional equal amount of liquidated damages. "These liquidated damages represent compensation, and not a penalty." *Local 246 Util. Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). Liquidated damages compensate for delay in receiving wages due caused by the employer's violation of the FLSA. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003); *United States v. Sabhnani*, 599 F.3d 215, 260 (2d Cir. 2010); *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991). "Double damages are the norm, single damages the exception. . . ." *Local 246*, 83 F.3d at 297 (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)); *accord Martin*, 940 F.2d at 908; *Sabhnani*, 599 F.3d at 260.

Despite the mandatory language of § 216(b), § 260 grants courts narrow discretion to limit or not award liquidated damages: "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he

- 5 -

had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [§ 216]." Under § 260, the employer has the difficult burden of establishing both subjective and objective good faith in its FLSA violation. *Local 246*, 83 F.3d at 297; *Alvarez*, 339 F.3d at 910. An employer must present evidence it had an honest intention and took affirmative steps to determine what the FLSA requires and to ensure compliance with the FLSA. *Nellis v. G.R. Herberger Revocable Trust*, 360 F. Supp. 2d 1033, 1045 (D. Ariz. 2005). "If the employer fails to carry that burden, liquidated damages are mandatory." *Local 246*, 83 F.3d at 297; *Alvarez*, 339 F.3d at 910; *see also Martin*, 940 F.2d at 908 ("If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.").

Thus, liquidated damages are compensation for work actually and already performed and do not implicate *Hoffman*'s opposition to compensating unauthorized workers for work not performed. *See Solis*, 938 F. Supp. 2d at 402. Moreover, Congress has mandated award of liquidated damages for violations of the FLSA except where the employer establishes both subjective and objective good faith. Congress has not granted courts discretion to limit liquidated damages under the FLSA for any other reason.

Therefore, an employer who violates § 206 or § 207 may be held liable to an unauthorized employee for liquidated damages in an additional amount equal to the amount of unpaid minimum wages and/or unpaid overtime compensation. At the trial on damages, Defendants may be excused from additional statutory liquidated damages if they carry the burden of showing subjective and objective good faith.

### III. Applicability of the *In Pari Delicto* Defense.

The common law *in pari delicto* doctrine, which prevents a plaintiff who has participated in wrongdoing from recovering damages resulting from the wrongdoing, has limited applicability to federal law claims. For example, the doctrine prevents a plaintiff

from recovering money voluntarily paid in furtherance of an illegal contract, such as to purchase alien registration cards or to bribe a public official. *Kardoh v. United States*, 572 F.3d 697, 700 (9th Cir. 2009). While the doctrine "has no place in federal antitrust ligation," a plaintiff's "complete involvement" in the wrongdoing may be used as a defense to a treble damages claim in an antitrust action. *See THI-Hawaii v. First Commerce Fin. Corp.*, 627 F.2d 991, 995 (9th Cir. 1980).

The doctrine may bar recovery in a private action for damages under federal securities law "on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of the suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985). The second prong requires careful consideration of public policy implications to ensure that "broad judge-made law does not undermine congressional policy favoring private suits as an important mode of enforcing federal securities statutes." *Pinter v. Dahl*, 486 U.S. 622, 633 (1988).

The Eleventh Circuit has considered the *in pari delicto* defense in the context of the FLSA. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306-09 (11th Cir. 2013); *Bailey v. TitleMax of Georgia, Inc.*, __ F.3d __, 2015 WL 178346, at *4 (11th Cir. Jan. 15, 2015). In *Lamonica*, the court found the first prong of the *Bateman Eichler* test was not satisfied and did not decide whether the *in pari delicto* doctrine could ever be applied in an FLSA action without interfering with its underlying policies.[1] 711 F.3d at 1308. Although the plaintiffs failed to accurately report income to the IRS and one was an unauthorized alien who used a false Social Security number, the court concluded that the *in pari delicto* defense did not apply because the plaintiffs did not participate in the

---

[1] In *Bailey*, the Eleventh Circuit again did not decide whether the *in pari delicto* doctrine could ever be applied in an FLSA action, but rather concluded that where an employer knew or had reason to know that his employee underreported his hours, the employer could not invoke equitable defenses based on that underreporting. 2015 WL 178346 at *7.

- 7 -

defendants' decision whether to pay them overtime wages in compliance with the FLSA. *Id.* at 1309. "The plaintiff must be an active, voluntary participant in the unlawful activity *that is the subject of the suit.*" *Id.* (quoting *Bateman Eichler* and adding emphasis); *Bautista Hernandez v. Tadala's Nursery, Inc.*, __ F. Supp. 2d __, 2014 WL 3738634, at *4-5 (S.D. Fla. July 3, 2014) (unauthorized alien who provided a false Social Security number and made false representations to avoid tax obligations was entitled to FLSA protections because he did not participate in determining the employer's overtime compensation practices).

Similarly, in *Sanchez-Calderon*, the district court considered whether plaintiffs should be foreclosed any recovery on their FLSA claims under the *in pari delicto* doctrine. 995 F. Supp. 1098, 1108 (D. Or. 1997). Defendants contended the doctrine should apply because the plaintiff agricultural workers had not registered with the farm and may have avoided immigration and internal revenue laws in the process. The court concluded that the defendants had not proven that the plaintiffs bore at least substantially equal responsibility for the FLSA violations they alleged and that to apply the *in pari delicto* doctrine at the summary judgment stage would interfere with the highly remedial nature of the FLSA. *Id.*

The doctrine of *in pari delicto* is a defense to liability, not to the amount of damages. Plaintiff already has been granted summary judgment on liability for his claims regarding unpaid wages and overtime to the extent of single damages, in an amount yet to be proved at trial. (Doc. 67.) Defendants did not show on summary judgment that Plaintiff actively and voluntarily participated in Defendant's failure to pay his wages and overtime compensation required by the FLSA, but the defense of *in pari delicto* was not briefed on summary judgment. In light of Defendants' lack of legal representation, in the Court's discretion the record will be reopened to allow Defendants to put on evidence at trial, if they have any, of an *in pari delicto* defense. But the circumstance alone that Plaintiff was an unauthorized worker does not establish that defense to the statutory damages.

1    IT IS THEREFORE ORDERED as a matter of law that the circumstance that Plaintiff was an unauthorized worker does not defeat Defendants' liability for single or statutory damages.

IT IS FURTHER ORDERED that the trial on damages to be set before a Magistrate Judge shall consider the quantification of Plaintiff's damages and any defense of *in pari delicto*.

Dated this 2nd day of February, 2015.

_____
Neil V. Wake
United States District Judge