IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julio Vallejo,<br><br>                   Plaintiff,<br><br>v.<br><br>Azteca Electrical Construction Inc., et al.,<br><br>                   Defendants. | No.  CV-13-1207-PHX-DKD<br><br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW** |

The Court here sets forth its Findings of Fact and Conclusions of Law following a bench trial. The Court previously entered summary judgment in favor of Plaintiff on his Fair Labor Standards Act (FLSA) claim, but reserved for trial the following issues: 1) Whether Defendant employers possessed the subjective and objective good faith with respect to the FLSA violation to support the application of an affirmative defense excusing statutory penalties; 2) Whether Defendant employers could assert the application of an *in pari delicto* defense; and 3) The amount of damages to which Plaintiff is entitled. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). Also, the Court previously determined that, based upon the absence of counsel for the corporate Defendant, any trial judgment against the individual Defendants would also be entered against the corporate Defendant, which elected to forego representation.

The parties in the Final Pretrial Order stipulated to the following findings of fact and conclusions of law which the Court accepts:

Defendant Azteca Electrical Construction, Inc. ("Azteca Electrical") is an electrical construction contractor that performed services for its customers throughout the State of Arizona during the relevant time period.

Defendants Carlos and Patricia Yado, husband and wife, were officers of Azteca Electrical at all times relevant to this action.

Defendant Carlos Yado ("Mr. Yado") has at all times relevant to this action been primarily responsible for managing operations and employees of Azteca Electrical.

Mr. Yado incorporated Azteca Electrical in 1993.

Prior to starting Azteca Electrical in 1993, Mr. Yado held supervisory and managerial positions with previous employers in which he had responsibility for monitoring hours worked by employees.

Throughout his tenure as owner and officer of Azteca Electrical, Mr. Yado was primarily responsible for monitoring hours worked by employees and wages paid to employees of Azteca Electrical.

In 2000, Mr. Yado hired Plaintiff as an employee for Azteca Electrical. At the time Plaintiff applied for employment, and throughout his tenure as an employee for Azteca Electrical, Plaintiff used the alias "Juan Vallejo."

At the time Mr. Yado hired Plaintiff in 2000, he hired Plaintiff as an employee and not as an independent contractor.

Throughout his tenure working for Azteca Electrical, Plaintiff used the alias "Juan Vallejo."

For an unspecified period of time between 2000 and 2010, Mr. Yado required employees of Azteca Electrical to complete time cards that employees were supposed to use to document their hours worked. At the end of each week, Mr. Yado would use the information from his notebook to prepare reports that included the employee or independent contractor / subcontractor's name, total hours worked for the week, and the project or nature of the work performed ("Weekly Reports"). On a daily basis, prior to using time cards, Mr. Yado would keep track of daily and weekly hours worked by recording hours in a notebook.

Sometime around January 2011, Mr. Yado stopped requiring employees to complete time cards and reverted back to keeping track of employee hours on a notebook.

Mr. Yado did not produce the notebooks he claims he used to record hours his employees worked on a daily and weekly basis, nor any other document showing the hours employees worked on a daily basis.

Sometime in early to mid-2010, Mr. Yado began paying Plaintiff and other employees with personal checks.

In December 2010, Plaintiff started receiving payment from Azteca Electrical again. Plaintiff continued to receive payment from Mr. Yado and Azteca Electrical through October 2011.

Mr. Yado admits that he never provided Plaintiff and other employees with a W-2 Form or Form 1099 for 2010 and 2011; however, he states that he advised Mr. Vallejo to request copies of those documents from the IRS.

Sometime around March 2011, Plaintiff began working on the Bullhead City Library Project ("Library Project").

Sometime around August or September 2011, Mr. Yado left the jobsite for medical reasons and did not return.

After Mr. Yado left the jobsite in August or September 2011, Plaintiff continued to speak with him on an "as needed" basis regarding the Library Project and the work that Mr. Ramirez and Plaintiff continued to perform.

Throughout Plaintiff's time working on the Library Project, Plaintiff used tools and equipment provided to him by Mr. Yado and Azteca Electrical, including use of a personal work truck owned by Mr. Yado, and tools owned by Azteca Electrical.

Defendants violated Plaintiff's rights under the FLSA.

Defendants violated Plaintiff's rights by failing to pay his wages as defined by Arizona law.

Based upon the evidence admitted at trial and the applicable law, the Court makes the following findings of fact and conclusions of law:

1. Sometime in June 2011, Plaintiff began keeping contemporaneous records of the time he spent working on the Library Project and began regularly requesting payment for hours worked from Defendants. Sometime around the beginning of September 2011, Plaintiff began complaining to Project Superintendent Neil Lincoln and Project Manager Tom Wallace about the lack of payment from Azteca Electrical. Mr. Lincoln and Mr. Wallace were employees of Summit DCK, LLC ("Summit") the General Contractor for the Library Project.

2. On October 31, 2011, Plaintiff sent an email to Mr. Lincoln, Mr. Yado, and Mr. Wallace, pleading that they provide payment for all of the unpaid wages that Mr. Ramirez and Plaintiff had accrued for work on the Library Project.

3. Rather than state that he would pay Mr. Ramirez and Plaintiff, Mr. Yado responded by threatening Plaintiff's employment if he continued to complain. (Exhibit 15: email from Mr. Yado on 10/31/2011 at 9:22 am stating: "Juan, I am working on your money as well as Alberto's. I am sorry that there is a problem, but there is. I hope you do not stir up to [sic] much of a problem, like you have in the pass [sic], and we can get this issue resolved. If this issue becomes a problem from you, I will not have any alternatives, but to make changes."; and email from Mr. Yado at the bottom of Bates number Vallejo000349 stating: "I will need a copy of yours and Alberto;s [sic] social security card and a Arizona drivers license.")

4. Over the next few weeks, Plaintiff continued to request payment from Mr. Yado for unpaid wages.

5. In months before and after Summit took over payment of wages, Mr. Yado continued to manage Plaintiff and the work Plaintiff was performing on behalf of Azteca Electrical on the Library Project. Plaintiff continued to have regular contact with Mr. Yado regarding the work on the Library Project until the Project was completed.

6. Based on records maintained by Plaintiff, Plaintiff seeks payment of his (1) unpaid wages between May and November 2011 ($7,912.75); (2) unreimbursed expenses for materials and fuel Plaintiff paid from his own money ($2,612.50); and damages for

unpaid minimum wages. *See* Exhibit 13, as modified by Plaintiff's reduced request in closing argument. *See also* copies of Plaintiff's summary of out-of-pocket expenses for materials and corresponding receipts, Exhibit 19, and Plaintiff's summary of out-of-pocket fuel expenses and corresponding receipts, Exhibit 20.

7. Mr. Yado testified that he "always kept a logbook" that recorded Plaintiff's work hours on a daily basis but that he no longer had the log book, and that it was never produced during the discovery phase of the case. However, he also testified that he did "have hours on the company weekly time sheets" that include the total number of hours that Plaintiff worked each week. These "weekly time sheets" were never presented at trial and thus are not part of the Court's record. (Documents which were marked for identification as Exhibit 1 were never admitted into evidence at trial.) The Court further observes that the testimony Mr. Yado sought from Mr. Vallejo was not consistent with Mr. Yado's statement that he "always kept a logbook" and had "company weekly time sheets." During Mr. Yado's examination of Mr. Vallejo, Mr. Yado insinuated that it was Mr. Vallejo's failure to request additional time cards that resulted in the failure in record keeping. The Court wonders how it is possible to "have hours on company weekly time sheets" if the time cards were not submitted, as insinuated?

8. The record-keeping responsibility is the duty of the employer and may not be delegated to an employee. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2; *Castillo v. Givens*, 704 F.2d 181, 194 (5th Cir. 1983). Moreover, as the Court previously determined, Defendants violated the FLSA. The Court is aware of no authority which permits an employer to build a good faith defense for its failure to keep accurate records on an alleged failure of the employee to perform that non-delegable duty. As Judge Wake explained in his February 2, 2015 Order "[a]n employer must present evidence it had an honest intention and took affirmative steps to determine what the FLSA requires to ensure compliance with the FLSA." (Doc. 92 at p. 6 *citing Nellis v. G.R. Herberger Revocable Trust*, 360 F.Supp.2d 1033, 1045 (D. Ariz. 2005)). Defendants did not meet

1  this burden. Indeed, the trial record, in particular the email exchange in Exhibit 15,
2  suggests a bad faith effort to avoid paying wages due.

3      9. In contrast to Defendants' failure to maintain and keep the required records,
4  admitted into evidence were Plaintiff's time records and his calculation of the hours he
5  worked during the relevant time period. Exhibit 13. The Court will credit those records.

6      10. In addition, Plaintiff testified that he was routinely reimbursed for work
7  place related expenses. He further testified that the amounts, supported by receipts
8  admitted into evidence as Exhibit 19, were not paid. Plaintiff also testified that he was
9  not paid for the gasoline expenses set forth in Exhibit 20 during this time period.
10 Plaintiff testified that he had been routinely paid these amounts previously. "He always
11 paid me" for gas, Mr. Vallejo testified. "I would give him the receipts for the gas, and he
12 would pay me for that."

13      11. Arizona law provides that "wages" include amounts for which an employee
14 "has a reasonable expectation to be paid". A.R.S. § 23-350(6). While Defendants made
15 no real challenge to the claim for unreimbursed workplace expenses, Defendants counter
16 that there was never a routine payment of gasoline expenses and that indeed Mr. Yado
17 had loaned a truck to Plaintiff for his use so that he would have reliable transportation.
18 What is plain is that the Defendants' business operations benefitted from Plaintiff's use
19 of the truck because he would use it to get to the worksite and there was testimony that it
20 was used to store Defendants' workplace tools. The Court found Plaintiff more credible
21 than Defendant's testimony on this point and finds that Plaintiff met his burden of proof
22 for both categories of reimbursement. Plaintiff is entitled to an award for the total of
23 unreimbursed workplace expenses and gasoline in the amount of $2,612.50.

24 Post-Trial Briefing

25    At the close of trial the Court invited the parties to submit briefs clarifying their
26 legal positions on the remedies sought and the applicable law. Defendants' brief asserted
27 that Plaintiff's "unclean hands" should bar his recovery and it argued that *Hoffman*
28 *Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), precluded an award of back pay

because of Plaintiff's lack of legal status authorizing work in the United States. However as Judge Wake made clear in his February 2, 2015 Order (Doc. 92), *Hoffman* does not preclude recovery of pay for work actually performed. To do so would frustrate both the goals of the FLSA as well as the immigration laws of the United States. *See* Order at pp. 3-4. The *in pari delicto* defense is also unavailing to Defendants because they have not shown that Plaintiff was an active and voluntary participant in the unlawful activity at issue, namely violation of the wage and hour laws. Defendant never presented this kind of evidence, instead Defendants focused on Plaintiff's violation of immigration laws – an issue unconnected to and irrelevant to the *in pari delicto* analysis. The Defendants' brief also included attachments A-C which contained Defendants' annotations of Plaintiff's demonstrative exhibit as well as cancelled checks and emails. Trial, not post-trial briefing on legal issues, is the time for submission of evidence. To the extent these matters were not admitted into evidence during trial, they cannot be considered.[1] Nevertheless, the Court observes that the cancelled checks included as Exhibit B to Defendants' post-trial brief are the same cancelled checks included in Plaintiff's Exhibit 2, which was admitted into evidence. These checks, excluding those for work before July 11, 2011, both total $10,400. Plaintiff submits that he received wages in the amount of $11,620 for the contested period and the Court will credit that amount against Plaintiff's records that he earned wages of $19,532.75. Thus Plaintiff is owed $7,912.75 for wages earned but not paid. Under Arizona law, the Court may treble this award, but it retains the discretion to choose a lesser amount and the Court will exercise that discretion and double this amount to $15,825.50. *Sanborn v. Brooker & Wake Property Management, Inc.*, 178 Ariz. 425, 429 (App. 1994) (recognizing that negligently kept wage records can justify the imposition of treble damages but also that a court has the discretion to award less).

In light of their pro se status, the Court will also respond to Defendants' argument in their post-trial brief which seeks the protection of the "corporate veil" and asserts that

---

[1] Defendants' post-trial brief did not request a hearing to reopen evidence.

"Plaintiff should never have been allowed to list Defendants, Carlos and Patricia Yado, separately in their [sic] civil complaint". Defendants' Brief at p. 9 (Doc. 107). Often the existence of a corporate entity shields the officers and directors of such entities from liability absent a showing of a reason to pierce the corporate veil. However, in the context of this case where the state and federal statutes define an "employer" more broadly, the usual rule does not apply. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "The Supreme Court has instructed that courts are to interpret the term 'employ' in the FLSA expansively." *Hale v. State of Arizona*, 993 F.2d 1387, 1393 (9th Cir. 1993), *citing Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326-27 (1992). *See also U.S. Dept. of Labor v. Cole Enterprises*, 62 F.3d 775, 778 (6th Cir. 1995) ("[C]orporate officer who has operational control of the corporation's covered enterprise is an 'employer' under FLSA, along with the corporation itself."). It does not appear that Arizona has adopted a narrower interpretation. A.R.S. § 23-350(g).

Plaintiff's post-trial brief clarified that in addition to the damages for unpaid earnings and unreimbursed expenses he was also seeking damages for failure to pay minimum wage, but he was not seeking damages for failure to pay overtime. Plaintiff seeks recovery for the failure to pay minimum wage under both the FLSA and the Arizona statute. Whether such "double recovery" is permitted seems to be an open question in Arizona. *Aragon v. Bravo Harvesting*, 1993 WL 432402 (D. Ariz. 1993). Some other jurisdictions have decided the issue one way or the other. In *Ghazvini v. Pittsburgh Wholesale Growers*, 2014 WL 6450367 (N.D. Cal. 2014), the court concluded that mention of an FLSA claim in plaintiff's complaint did not necessarily provide that a federal claim was also asserted in light of the simultaneous pleading of a state claim, but an Oregon district court determined that "[b]oth penalties are available '[w]here there are two separate statutory schemes and two separate remedies, each with its own purpose.'" *Castro-Vega v. Waible*, 2007 WL 4885440 (D. Or. 2007), *citing Hurger v. Hyatt Lake Resort, Inc.*, 170 Or.App. 320, 323, 13 P.3d 123, 124 (2000), *rev. denied*, 331 Or. 583, 19

P.3d 355 (2001). *See also Pineda v. Masonry Const., Inc.*, 831 F.Supp.2d 666, 682 (S.D. NY. 2011). Jurisdictions that permit recovery under both state and federal law do so based upon a determination in that jurisdiction that the two regulatory schemes advance separate goals or remedies. In light of the fact that no Arizona state court has made this finding, this Court will decline to award minimum wage damages under both statutes and will employ only the Arizona provision which is slightly more favorable to Plaintiff. The Court finds support for this action in light of the fact that the doubled award for unpaid wages will in one sense correct the violation of the minimum wage violation because it provides for payment at a wage far in excess of the Arizona minimum wage (exclusive of the multiplier). Thus, Plaintiff is entitled to an award of $5,410.20 (unpaid minimum wages of $2,705.10 doubled pursuant to A.R.S. § 23-364(G)) for the Defendants' failure to pay the required minimum wage.

In accordance with the foregoing, **IT IS ORDERED** that the Clerk shall enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in the total amount of $23,848.20.

Dated this 9th day of February, 2016.

_____
David K. Duncan
United States Magistrate Judge